01

02

03

04

05          UNITED STATES DISTRICT COURT
06          WESTERN DISTRICT OF WASHINGTON
                     AT SEATTLE

07  ANTHONY P. JOHNSON,              )    CASE NO.: C07-0195-JCC
                                     )
08           Petitioner,             )
                                     )
09      v.                           )    REPORT AND RECOMMENDATION
                                     )
10  TIMOTHY WENGLER,                 )
                                     )
11           Respondent.             )
    _____ )

12

13          Petitioner Anthony P. Johnson proceeds *pro se* and *in forma pauperis* in this 28 U.S.C.

14  § 2254 habeas action.  He is in custody pursuant to a 2000 conviction by jury verdict of Murder

15  in the Second Degree.  (Dkt. 15, Ex. 1.)  Petitioner raises five grounds for relief in his habeas

16  petition (Dkt. 7 at 16-19 and Dkt. 12) and requests an evidentiary hearing (Dkt. 20).  Respondent

17  filed an answer to the petition with relevant portions of the state court record.  (Dkts. 13 & 15.)

18  Respondent argues that petitioner's first four grounds for relief lack merit and that his fifth ground

19  for relief is procedurally barred.  Respondent also argues against the request for an evidentiary

20  hearing.  (Dkt. 22.)  Petitioner objects to respondent's arguments in an amended reply.  (Dkt. 19.)

21          The Court has considered the record relevant to the grounds raised in the petition,

22  including all hearing transcripts.  For the reasons discussed herein, it is recommended that

REPORT AND RECOMMENDATION
PAGE -1

01   petitioner's habeas petition be denied and this action dismissed.

02                              I

03       The Washington Court of Appeals described petitioner's case as follows:

04         Johnson and Michael Ruff were friends.  Ruff lived with his mother Essie
Winters and stepfather Adrian Winters.  One evening, while Essie was watching
05 television in her living room, she overheard Ruff in another room, denying some sort
of accusation on the telephone.  Shortly afterwards, someone came to the front door
06 and Essie heard the sounds of a struggle and more denials from Ruff, but did not see
anyone.  The sounds quickly moved closer to the door of the living room, and Essie
07 saw a spray of blood in the entry hall.  Ruff ran into the living room, holding his neck
and spattering the telephone with blood as he and Essie tried to call 911.  Ruff told
08 her that "Andog" had hurt him.  Johnson's nickname was "Ant-dog."

09         Adrian Winters, awakened by the noise, came into the living room and tried
to stop Ruff's bleeding with a towel.  When they had difficulty communicating with
10 the 911 operator, Ruff ran to his neighbor David Wilkins' home and pounded on the
door.  Before Wilkins got to his door, Ruff ran into the street, where Wilkins then
11 found him sitting.  While they waited for medics, Ruff talked about Jesus and said he
was "ready to go."  Ruff also said that Johnson had thought he was messing with
12 Johnson's car and stabbed Ruff.  Police arrived and Ruff gave them Johnson's name
and address and described Johnson's Mazda RX-7.  Medics transported Ruff to the
13 hospital, but doctors were unable to stop the bleeding from Ruff's seven knife wounds
and he died.

14

15         Police were initially unable to find Johnson at his home but after
approximately two hours, learned he had returned.  When they met him, he appeared
16 to be very clean, as if he had bathed, and his clothes appeared very clean.  Johnson
made several spontaneous statements after his arrest.  He had thought Ruff was his
17 friend; Ruff only pretended to like him and was envious; Ruff was supposed to work
on his car; and three lug nuts on a wheel had been loosened.  Johnson also asked why
anyone would want to hurt him.

18

19         The state charged Johnson with one count of first degree premeditated murder
and a second, alternative count of second degree felony murder.  Each count also
20 contained a deadly weapon allegation.  The defense presented a defense of alibi
through testimony from one of Johnson's friends and Johnson.  The defense also
21 proposed lesser included offense instructions.  The jury found Johnson guilty of
second degree intentional murder as a lesser included offense of first degree murder,
22 and found him guilty as charged of second degree felony murder.  The jury also
found, as to each count, that a deadly weapon was used.

REPORT AND RECOMMENDATION
PAGE -2

01         During discussion of jury instructions and again before sentencing, defense counsel argued that the charging scheme violated double jeopardy. The court disagreed, reasoning that the two counts merely described alternative means for one crime of second degree murder, and entered the findings that "Counts I & II merge into one conviction of Murder in the Second Degree." The court imposed only one sentence.

05 (Dkt. 15, Ex. 2 at 1-3.) The trial court sentenced petitioner to a total of 219 months confinement.

06 (*Id.*, Ex. 1 at 4.)

07         Petitioner appealed with the assistance of counsel. (*Id.*, Ex. 3.) He raised three

08 assignments of error:

09     1.     The court erred by allowing Johnson to be prosecuted and convicted of two counts of murder for a single act, in violation of the double jeopardy clause.

11     2.     The court erred by failing to dismiss the charge of felony murder which was based on an offense not supported by the facts and contrary to legislative intent.

13     3.     The trial court deprived Johnson of a fair trial by failing to ascertain whether the alibi witness had legitimate reasons for failing to speak to law enforcement before permitting the prosecution to cross-examine the witness on this point.

14 (*Id.* at 1.) The Washington Court of Appeals subsequently granted petitioner's motion to strike

15 the second and third arguments and to modify the remedy requested to seek that both counts I and

16 II be vacated. (*Id.*, Ex. 4.)

17         Petitioner also filed a *pro se* supplemental brief. (*Id.*, Ex. 7.) He raised the following

18 assignments of error:

19     1.     Did the court error by allowing appellant to be charged with 4 crimes and convicted of two, did this prejudice him and violate the Double Jeopardy Clause and his right to trial by jury and was the jury properly instructed?

21     2.     Was the appellant deprived of his 6th Amendment Article 1 Section 22 right to a fair impartial trial due to the admission of evidence and arguments that

REPORT AND RECOMMENDATION
PAGE -3

01  was more prejudice than probative and by its cumulative effects.

02  3.  Was appellants right to due process of the law violated by the state failing to present substantial evidence to prove to any rational trier of fact guilt beyond

03  a reasonable doubt and was his right to effective assistance of counsel violated by counsel's inaction, [etc.]?

04

05  (*Id.* at 1-2 (case altered).)

06  The Washington Court of Appeals affirmed the conviction. (*Id.*, Ex. 2.) Through counsel,

07  petitioner filed a motion for reconsideration. (*Id.*, Ex. 10.) The Court of Appeals denied this

08  motion. (*Id.*, Ex. 11.)

09  Petitioner filed a *pro se* petition for review. (*Id.*, Ex. 12.) He raised the following issues

10  for review:

11  1.  Was 2nd degree felony murder properly charged as an alternative means of committing 1st degree premeditated murder; was the jury properly instructed that

12  Count II was a alternative to Count I, thus was petitioner's right to due process violated?

13

14  2.  Did legislation intend for an accused to be convicted on both subsections under RCW 9A.32.050(a)(b) for a single homicide, and, is the Court of Appeals decision in accord with legislative intent?

15

16  3.  Does felony murder based on assault require a different intent than intentional murder and is convictions on both subsection for one death inconsistent and/or repugnant; is there a violation of due process or double jeopardy?

17

18  4.  Was the effectual merger of Count I with Count II proper and in accordance with prior judicial ruling and the constitutions?

19  5.  Can it be said due process of the law was met. I.e. charging information, instructions, double jeopardy, reasonable doubt standard, jury unanimity, [etc.]?

20

21  6.  Is there a reasonable possibility petitioner was prejudiced on all charges by the instructions relating to felony murder by said instructions inducing the jury to convict on both counts thus was petitioner's right to due process violated?

22

REPORT AND RECOMMENDATION
PAGE -4

7. Was it appropriate to charge premeditated murder where there was no evidence of premeditation and could or did that charge prejudice petitioner by inducing convicts on felony and/or intentional murder, was there a due process violation?

8. Is there a reasonable possibility petitioner did not receive trial by a unanimous, impartial, and unbiased jury in accordance with the constitutions, and, was the jury allowed to render a non-unanimous verdict?

9. Was petitioner placed twice in jeopardy?

10. Did the Court of Appeals address the prejudicial effects of the issues raised at PSB 22-49, was this done with fairness and balance?  Probative of prejudice.

11. Did petitioner knowingly, intelligently and voluntarily waive his right to remain silent and to have counsel present.

12. Is dismissing both counts the appropriate remedy?

(*Id.*, Ex. 12 at 1A-2A (case altered).)

 The Washington Supreme Court denied the petition for review. ( *Id.*, Ex. 13.) The Washington Court of Appeals issued its Mandate on June 20, 2003. (*Id.*, Ex. 14.)

 On November 17, 2003, petitioner filed a personal restraint petition with the Washington Court of Appeals. (*Id.*, Ex. 15.)  He raised three grounds for relief:

1. I should be given a new trial or released from confinement because Felony Murder under RCW 9A.32.050(1)(b) can not be predicated upon assault, and, because said charge and conviction was prejudicial and deprived me of a fair trial, and the instructions on such were prejudicial.

2. I should be given a new trial or released from confinement because the verdicts in my case are legally and logically inconsistent and repugnant and/or because the lack of unanimity and repugnancy deprived me of Due Process of the law and trial by jury.

3. I should be given a new trial or released from confinement because my convictions on count I and count II (RCW 9A.32.050(1)(a) & (b) for the same act is a violation of the Double Jeopardy Clause, my right to trial by unanimous jury and deprived me of a fair trial, and, because the trial courts remedy of merging the two convictions were unauthorized and improper does

REPORT AND RECOMMENDATION
PAGE -5

01          not protect me from the dangers of double jeopardy and interfers [sic] with
my right to trial by jury.

02

03  (*Id*. at 2, 9 and 14.) On December 15, 2003, finding that it presented significant issues currently

04  before the Supreme Court in other consolidated cases, the Court of Appeals stayed the petition.

05  (*Id*., Ex. 16.)

06      In a motion dated June 8, 2004, petitioner sought to file an addendum to his petition. (*Id*.,

07  Ex. 17.) In the following month, he filed two motions to lift the stay. ( *Id*., Exs. 18-19.) On

08  August 2, 2004, the Court of Appeals granted the motion to lift the stay and granted the motion

09  to file an addendum "subject to the time limitations in RCW 10.73.090." (*Id*., Ex. 20.) An

10  addendum filed by petitioner on September 10, 2004 raised the following three additional issues:

11        4.      Why the courts decision in <u>Andress</u> applies to petitioner's case.

12        5.      I should be given a new trial or released from confinement because an
unauthorized or unconstitutional conviction in violation of due process can

13                not be the basis for sentencing petitioner to another crime and; because
Petitioner's conviction can not be changed or swapped to a manslaughter or

14                assault.

15        6.      I should be given a new trial or released from confinement because I was
denied due process of the law by the State's use of false material evidence

16                and; counsel was ineffective for failing to interview and call witnesses which
could and would have refuted the false material evidence and presented

17                exculpatory evidence.

18  (*Id*., Ex. 21 at 1, 3 and 11.)

19      In December 2004, the Court of Appeals again stayed the petition pending resolution of

20  cases considering similar issues. (*Id*., Ex. 24.) In February 2006, following two motions filed by

21  petitioner, the Court of Appeals lifted the stay. (*Id*., Exs. 25-26.) By order dated April 10, 2006,

22  the Court of Appeals denied petitioner's personal restraint petition. ( *Id*., Ex. 27.) The court

REPORT AND RECOMMENDATION
PAGE -6

01  acknowledged that the decision in *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981

02  (2002), in holding that assault could not serve as the predicate felony for second degree felony

03  murder, rendered the charge on second degree felony murder infirm.  (Dkt. 15, Ex. 27 at 1-5.)

04  However, the Court of Appeals found that petitioner's conviction remained lawful based on the

05  verdict on the alternative means of committing second degree murder. (*Id*.)  The court also

06  denied a motion to reconsider.  (*Id*., Exs. 28-29.)

07          Petitioner filed a motion for discretionary review with the Washington Supreme Court.

08  (*Id*., Ex. 30.)  He raised the following issues for review:

         1.      Petitioner was convicted of intentional murder (count I) and felony murder
09                 (count II), Court of Appeals did not explicitly consider this issue.  Are the 2
10                 convictions repugnant in violation of due process?

                 a.      Should an "as charged" analysis be employed to determine when a
11                         felony murder conviction is repugnant to an intentional murder
12                         conviction?

13               b.      Did the 2 jury findings create an inconsistency & repugnancy in the
                         verdict?
14
                 c.      Does the repugnant nature of the verdicts require reversal?
15
         2.      The jury found petitioner guilty of intentional murder (count I) and felony
16                 murder (count II).  Felony murder based on assault was improperly charged.
                 Was the jury required to be unanimous as to one count but not both and does
17                 the fact that the jury did not unanimously choose 1 or the other require
                 reversal?
18
                 a.      Can it be said beyond a reasonable doubt whether the jury was
19                         unanimous as to count I, count II, both or neither?

20               b.      Was the jury required to be unanimous as to a specific count but not
                         to find guilt on both?
21
                 c.      Does the fact that the jury found guilt on a properly charged crime and
22                         a improperly charged crime for the same act and that it cannot be said

REPORT AND RECOMMENDATION
PAGE -7

which the jury truely [sic] unanimously believed was committed, require reversal?

3. The Supreme Court decided in <u>Andress</u> that felony murder could not be based upon assault. The jury convicted Johnson on both the properly and improperly charged crime of intentional and felony murder (assault) for the same act. The trial court merged the 2 convictions into 1 conviction. Was a merger properly found and does <u>Andress</u> and other Supreme Court precedence mandate the vacation of the 2nd degree murder conviction?

    a. Was a merger properly found in light of i) Constitutional law & legislative intent ii) That the merging crimes require independent intents and; iii) That one of the merging crimes was improperly charged?

    b. Does such merger shield the conviction against the <u>Andress</u> mandate?

    c. Under the attending circumstances, should the 2nd degree murder conviction be reversed?

4. The jury was instructed on intentional murder in the 2nd degree and felony murder based on assault in the 2nd degree. The jury was instructed to first consider the improperly charged felony murder. The jury was then instructed to be unanimous as to "second degree murder." The jury convicted on both counts of second degree murder. Can it be said that the jury was not prejudiced by having to first consider the improperly charged crime?

    a. Under the attending circumstances, can it be said beyond a reasonable doubt that petitioner received a fair trial in accordance with due process where the jury was instructed to first consider a improperly charged crime?

5. Petitioner raised the issue of ineffective assistance of counsel and prosecutorial use of perjured testimony in a addendum to P.R.P. Court of Appeals held that said issues were time barred, that P.R.P. was not tolled, and Johnson had not presented a colorable claim. Does tolling or an exception under RCW 10.73.100(1) or (4) apply and has a colorable claim been presented?

    a. Was one-year time limit of RCW 10.73.090 tolled while P.R.P. was pending?

    b. Should this issue be considered under RCW 10.73.100(1) or (4)?

01        c.      Was trial counsel ineffective for failing to investigate witnesses who could have presented exculpatory and material evidence?

02

03        d.      Has petitioner presented a colorable claim of prosecutorial use of perjured testimony?

04 (*Id.* at 1-3.)

05      The Washington Supreme Court Commissioner denied review.  (*Id.*, Ex. 32.)  Petitioner

06 filed a motion to modify the Commissioner's ruling, which the Washington Supreme Court denied.

07 (*Id.*, Exs. 33-34.)  On November 17, 2006, the Washington Court of Appeals issued its mandate.

08 (*Id.*, Ex. 35.)

09                              II

10      Petitioner now raises five grounds for habeas relief:

11    1.      Petitioner was convicted of intentional murder, RCW 9A.32.050(1)(a), (count I) and felony murder based on 2nd degree assault, RCW 9A.32.050(1)(b), and RCW 9A.36.021(1), (count II) for a single act causing one death.  The felony murder count was ultimately found to have been improperly charged.  The jury was not instructed to unanimously choose one or the other but not both, thus violating petitioner's right to due process of the law and trial by jury as guaranteed by the 5th and 6th Amendments of the U.S. Constitution and established federal law as determined by the Supreme Court.

16        a.      Should the jury have been instructed to unanimously choose one count or the other but not both and was it error for the trial court not to do so?

18        b.      Does failure to instruct the jury to choose one count or the other but not both and that it can not be said which count the jury would have chosen if so instructed, does such require a new trial?

20    2.      .  .  .  The two convictions creates an inconsistency and repugnancy in the verdict depriving petitioner of his right to trial by jury and due process under the 5th and 6th Amendments of the U.S. Constitution and established federal law thus requiring a new trial.

22        a.      As charged and tried, did the two jury findings create an inconsistency

REPORT AND RECOMMENDATION
PAGE -9

01          and repugnancy in the verdict?

02          b.      Does the repugnancy/inconsistency deprive petitioner of his
                    constitutional right to due process and trial by impartial jury thus
03                  requiring a new trial?

04    3.    . . . The instructions to the jury allowed them to convict on both counts of
            second degree murder without requiring unanimity as to either in violation of
05          trial by jury and due process under the 5th and 6th Amendments of the U.S.
            Constitutions.

06

07          a.      Did the instructions to the jury allow for a non-unanimous verdict as
                    to either intentional murder, felony murder, or both?

08    4.    . . . [The convictions] constitute[] double jeopardy in violation of the 5th
            Amendment of the U.S. Constitution.  The trial court improperly merged the
09          two convictions into one conviction.

10          a.      Does the two convictions on both counts constitute double jeopardy?

11          b.      In light of constitutional law, was a merger properly found between
                    the two counts?

12

13    5.    State used perjured testimony and false evidence in violation of the 5th
            Amendment in order to obtain its convictions.  Counsel was ineffective in
            violation of the 6th Amendment in dealing with this perjured testimony and
14          false evidence.  The one-year time limit for collateral attacks should have been
            tolled during the time petitioner's Personal Restraint Petition was stayed.

15

            a.      Did the State use perjured testimony/false evidence in obtaining the
16                  convictions, thus, requiring a new trial?

17          b.      Was trial counsel ineffective for failing to investigate and call
                    witnesses to address the use of perjured testimony and false evidence?

18

            c.      Should the stay placed on Petitioner's Personal Restraint Petition toll
19                  the one-year time limit for collateral attacks?

20    (Dkt. 7.)

21          Respondent concedes that petitioner properly exhausted his grounds for relief by

22    presenting them to the Washington Supreme Court as federal constitutional claims.        *See*

REPORT AND RECOMMENDATION
PAGE -10

01 | *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (to exhaust state remedies, a petitioner must

02 | present each of his claims to the state's highest court) and *Hiivala v. Wood*, 195 F.3d 1098, 1106

03 | (9th Cir. 1999) (a petitioner must "alert the state courts to the fact that he was asserting a claim

04 | under the United States Constitution.")  (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).

05 | However, respondent argues that petitioner's fifth ground for relief was expressly and procedurally

06 | barred under an independent and adequate state procedural rule, RCW 10.73.090, in the

07 | Washington Court of Appeals.  Respondent further argues that petitioner's first four grounds for

08 | relief lack merit and that his request for an evidentiary hearing should be denied.

09 | As conceded by respondent, it appears that petitioner properly exhausted his grounds for

10 | relief.  However, before considering the merits of petitioner's claims, the Court must first address

11 | respondent's procedural bar argument.

12 | III

13 | Pursuant to RCW 10.73.090, no petition or motion for collateral attack on a judgment and

14 | sentence in a criminal case may be filed more than a year after the judgment becomes final.

15 | Additionally, if the state court expressly declined to consider the merits of a claim based on an

16 | independent and adequate state procedural rule, or if an unexhausted claim would now be barred

17 | from consideration by the state court based on such a rule, a petitioner must demonstrate a

18 | fundamental miscarriage of justice, or cause, *i.e.* some external objective factor that prevented

19 | compliance with the procedural rule, and prejudice, *i.e.* that the claim has merit.  *See Coleman v.*

20 | *Thompson*, 501 U.S. 722, 735 n.1, 749-50 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).

21 | In this case, petitioner's judgment and sentence became final on June 20, 2003, when the

22 | Washington Court of Appeals issued its Mandate. (Dkt. 15, Ex. 14.)  Petitioner timely filed his

01  personal restraint petition on November 17, 2003 and, on December 15, 2003, the Court of

02  Appeals stayed the petition.  (*Id.*, Exs. 15-16.)  In a motion dated June 8, 2004, petitioner filed

03  a motion to file an addendum to his petition and, in July 2004, he filed two motions to lift the stay.

04  (*Id.*, Exs. 17-19.)  On August 2, 2004, the Court of Appeals granted the motion to lift the stay and

05  granted the motion to file an addendum "subject to the time limitations in RCW 10.73.090."  (*Id.*,

06  Ex. 20.)  Petitioner filed his addendum on September 10, 2004.  (*Id.*, Ex. 21.)

07          In considering petitioner's addendum, the Washington Court of Appeals held as follows:

08          Johnson, in an "Addendum Personal Restraint Petition" filed on September 10,
        2004, also contends he should be given a new trial or released from confinement
09      based on ineffective assistance of counsel and the State's use of perjured testimony.
        Neither claim is timely under the one-year time limit in RCW 10.73.090.  Johnson
10      argues without citation to any authority that these new issues are not barred under
        RCW 10.73.090 because the statute of limitations was "tolled" during the time his
11      petition was stayed pending the resolution of other cases addressing <u>Andress</u>-related
        issues.  Johnson might have a point if the new issues he seeks to raise were
12      inextricably tied to the holdings in either   <u>Andress</u> or <u>Hinton</u>, but they aren't.
        Therefore, the issues raised in Johnson's "Addendum to Personal Restraint Petition"
13      are time barred.  <u>See</u> <u>In re Pers. Restraint of Benn</u>, 134 Wn.2d 868, 938-39, 952 P.2d
        116 (1998).  (A supplement to a personal restraint petition does not relate back to the
14      filing of the original petition and is subject to the statute of limitations in RCW
        10.73.090.).

15

16  (*Id.*, Ex. 27 at 6.)  The Court also separately addressed the merits of the claims raised in the

17  addendum, finding no evidence of prosecutorial misconduct or ineffective assistance of counsel.

18  (*Id.* at 7.)  In denying discretionary review, the Washington Supreme Court Commissioner held:

19          Mr. Johnson also claims that his addendum was timely because the statutory
        limitation period was equitably tolled when the court stayed his petition.  While the
20      Court of Appeals has held that equitable tolling applies to RCW 10.73.090, it has not
        held that the period is tolled by merely staying the petition.  *In re Pers. Restraint of*
21      *Hoisington*, 99 Wn. App. 423, 430-32, 993 P.2d 296 (2000) (equitable tolling under
        RCW 10.73.090 requires a finding of bad faith, deception, or false assurances, and the
22      exercise of due diligence).  Mr. Johnson also claims that the evidence he relies on in

REPORT AND RECOMMENDATION
PAGE -12

01   his addendum was newly discovered, and thus under RCW 10.73.100(1) the one-year
   time limitation on collateral attacks does not apply.  But the evidence was in the
02   record below and could have been discovered by the exercise of due diligence.

03 (*Id.*, Ex. 32 at 2.)

04    Respondent asserts that petitioner could have pursued his ineffective assistance of counsel

05 and prosecutorial misconduct claims in his personal restraint petition.  He argues that, for this

06 reason, petitioner cannot show cause for his procedural default.

07    Petitioner notes that he sought permission to file his addendum less than a year after his

08 judgment became final.  He asserts that the state court caused the delay by waiting two months

09 before ruling on his motion and lifting the stay.  He avers that, because there is no rule allowing

10 or disallowing the filing of amendments to personal restraint petitions, *see Benn*, 134 Wn.2d at

11 938-39, the state court's decision to not consider the addendum was discretionary.  Petitioner

12 further argues that, because the stay was apparently seen as good cause for allowing a delay in the

13 filing of respondent's response to the petition, it should also have sufficed to excuse any delay in

14 the filing of his addendum.  Petitioner asks the Court to decide whether a stay on post-trial

15 proceedings tolls the one-year filing time limit.[1]

16    However, the Court finds petitioner's arguments misplaced.  The Washington Court of

17 ————————————————

18   [1] In making this argument, petitioner points to the one-year statute of limitation established
 by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  However, the AEDPA
19 time limit relates to the filing of a federal habeas petition, not to the filing of a collateral attack in
 state court.  *See* 28 U.S.C. § 2244(d)(1).  Also, quoting the Ninth Circuit Court of Appeals
20 decision in *Dictado v. Ducharme*, 244 F.3d 724, 727-28 (9th Cir. 2001), petitioner argues that,
 because the state court considered the merits of the claims raised in his addendum, those claims
21 should be reviewed.  However, the *Dictado* language relied on addressed exceptions to the RCW
 10.73.090 time limit not at issue here and whether a habeas petition was "'properly filed'"
22 pursuant to AEDPA.  *See id.*  Moreover, it was, in fact, overruled by the United States Supreme
 Court in *Pace v. Diguglielmo*, 544 U.S. 408, 412-17 (2005).

01 Appeals found the claims raised in petitioner's fifth ground for relief time-barred based on an

02 independent and adequate state procedural rule, and supported this conclusion with Washington

03 Supreme Court precedent.   The question before this Court is, therefore, whether petitioner can

04 show cause and prejudice to excuse his procedural default.

05 　　　　　Petitioner provides no explanation for why these claims were not included in his personal

06 restraint petition, let alone why he only sought permission to file the addendum approximately two

07 weeks prior to the expiration of the one-year time limit and, even then, failed to include the actual

08 addendum with his motion.   He focuses on the stay and the two month delay in responding to his

09 motion to file an addendum as external objective factors preventing compliance with the

10 procedural rule, rather than his own inaction in diligently pursuing these claims in a timely fashion.

11 It was first and foremost petitioner's inaction, however, that prevented consideration of the claims

12 raised in the addendum.   Accordingly, because petitioner fails to demonstrate cause excusing his

13 procedural default, the Court finds no basis for considering the claims raised in petitioner's fifth

14 ground for relief.

15 　　　　　Having considered respondent's procedural bar argument, the Court now directs its

16 attention to the merits of petitioner's first four grounds for relief.   As reflected below, the Court

17 finds that petitioner's claims can be resolved by reference to the state court record and, therefore,

18 that an evidentiary hearing is not necessary.   *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir.

19 1998) ("[A]n evidentiary hearing is *not* required on issues that can be resolved by reference to the

20 state court record.")

21 　　　　　　　　　　　　　　　　　　　　IV

22 　　　　　This Court's review of the merits of petitioner's claims is governed by 28 U.S.C. §

REPORT AND RECOMMENDATION
PAGE -14

01  2254(d)(1).  Under that standard, the Court cannot grant a writ of habeas corpus unless a

02  petitioner demonstrates that he is in custody in violation of federal law and that the highest state

03  court decision rejecting his grounds was either "contrary to, or involved an unreasonable

04  application of, clearly established Federal law, as determined by the Supreme Court of the United

05  States."  28 U.S.C. § 2254(a) and (d)(1).  The Supreme Court holdings at the time of the state

06  court decision will provide the "definitive source of clearly established federal law[.]"  *Van Tran*

07  *v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled in part on other grounds by Lockyer*

08  *v. Andrade* , 538 U.S. 63 (2003).  A state-court decision is contrary to clearly established

09  precedent if it "'applies a rule that contradicts the governing law set forth in'" a Supreme Court

10  decision, or "'confronts a set of facts that are materially indistinguishable'" from such a decision

11  and nevertheless arrives at a different result.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting

12  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

13  A.    <u>Ground One</u>

14        In his first ground for relief, petitioner argues that the jury should have been instructed to

15  unanimously choose either the intentional murder count or the felony murder count, but not both.

16  He asserts that, because the conviction on the felony murder count was contrary to Washington

17  law as established in *Andress*, 147 Wn.2d at 604,  it cannot be said which count the jury would

18  have chosen if properly instructed.  However, for the reasons described below, the Court agrees

19  with respondent that petitioner's first ground for relief lacks merit.

20        The jury was instructed on two counts: (1) Premeditated Murder in the First Degree, with

21  the lesser-included offenses of Second Degree Intentional Murder and Manslaughter in the First

22  Degree ("Count I"); and (2) Second Degree Felony Murder ("Count II").  (Dkt. 15, Ex. 22, Appx.

01   C at 81-98.)  The jury was instructed to separately consider and unanimously agree as to both

02   Count I and Count II.  (*Id.* at 80, 102-03 and Appx.'s D & E.)  The jury returned guilty verdicts

03   as to second degree intentional murder and second degree felony murder.  (*Id.*, Appx. D at 107

04   and Appx. E at 108.)

05        In Washington, "second degree intentional murder and second degree felony murder are

06   alternative means of committing the crime of second degree murder.  Therefore, the State is not

07   required to elect between the alternative means of committing second degree murder."  *State v.*

08   *Berlin*, 133 Wn.2d 541, 553, 947 P.2d 700 (1997).  In reaching this conclusion, the Washington

09   Supreme Court reasoned: "'The readily perceivable connection between the acts set forth is a

10   common object: causing the death of another person. The methods of committing second degree

11   murder are not repugnant to each other; proof of an offense under one subsection does not

12   disprove an offense under the other subsection.'"  *Id.* (adopting reasoning in and quoting *State v.*

13   *Russell*, 33 Wn. App. 15, 579, 586, 657 P.2d 338 (1983), *rev'd in part on other grounds*, 101

14   Wn.2d 349, 352, 678 P.2d 332 (1984)).

15        In considering the claim raised in petitioner's first ground for relief, the Washington Court

16   of Appeals acknowledged this state law:

17            [C]ontrary to Johnson's claim, because the two counts involved alternative
            means, not alternative crimes, the jury was not required to elect only one means.
18            [(State v. Berlin, 133 Wn.2d at 553.)  Because the State charged the alternatives in
            separate counts and the jury was instructed to enter unanimous verdicts on each
19            count, Johnson actually received a greater assurance of unanimity on each alternative
            means than the constitution requires.]   And the State properly charged both
20            alternative means because they are not repugnant. [Id.]

21   (Dkt. 15, Ex. 2 at 6 (text of footnotes inserted into quote).)  Also, in denying petitioner's personal

22   restraint petition, the Court of Appeals addressed his argument regarding confusion as to the jury's

REPORT AND RECOMMENDATION
PAGE -16

01 | intent:

02 |      We also reject Johnson's claim that the instructions given raise doubts as to what jurors intended when they found him guilty of the lesser included offense of

03 | second-degree murder.  When viewed as a whole, the instructions are neither confusing nor misleading.  "Jury instructions are to be read as a whole and each

04 | instruction is read in the context of all others given."  <u>State v. Brown</u>, 132 Wn.2d 529, 605, 940 P.2d 546 (1997).  Nothing suggests the jurors misunderstood the plain

05 | meaning of the instructions given to them.  The trial court instructed the jury that, "[a] separate crime is charged on each count.  You must decide each count separately.

06 | Your verdict on one count should not control your verdict on any other count."  The jurors are presumed to follow the instructions they are given.  <u>State v. Holt</u>, 119 Wn.

07 | App. 712, 719, 82 P.3d 688 (2004).

08 | (*Id.*, Ex. 27 at 5.)

09 |      A claim that a jury instruction was incorrect under state law is not a basis for habeas relief.

10 | *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  *See also Lewis v. Jeffers*, 497 U.S. 764, 780

11 | (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]")  Instead, the

12 | Court's "review is limited to determining whether an allegedly defective jury instruction 'so

13 | infected the entire trial that the resulting conviction violates due process.'" *Carriger v. Lewis*, 971

14 | F.2d 329, 334 (9th Cir. 1992) (quoting  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "The

15 | burden of demonstrating that an erroneous instruction was so prejudicial that it will support a

16 | collateral attack on the constitutional validity of a state court's judgment is even greater than the

17 | showing required to establish plain error on direct appeal."  *Henderson v. Kibbe*, 431 U.S. 145,

18 | 154 (1977).  With the failure to give an instruction, the petitioner's burden is "especially heavy"

19 | because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a

20 | misstatement of the law."  *Id.* at 155; *accord Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir.

21 | 1997).

22 |      Petitioner first points to *Milanovich v. United States*, 365 U.S. 551 (1961), as supporting

REPORT AND RECOMMENDATION
PAGE -17

01  his contention that the jury instructions in his case violated his right to due process.  However,

02  *Milanovich* does not assist petitioner here.  In that case, the United States Supreme Court found

03  that a trial judge erred in failing to instruct the jury that a guilty verdict could be returned on either

04  a count of stealing or a count of receiving the same goods, but not both, and found a new trial in

05  order given that there was no way of knowing what a properly instructed jury would have found.

06  *Milanovich*, 365 U.S. at 554-56.  *Milanovich* did not address a federal constitutional violation;

07  it interpreted a specific federal statute as not permitting an offender to be convicted for both

08  stealing and receiving the same goods.    *Id*. at 553-54 ("[T]he question is one of statutory

09  construction, not of common law distinctions."; finding that, as with a different federal statute

10  previously addressed by the Court, "'Congress was trying to reach a new group of wrongdoers,

11  not to multiply the offense of the . . . robbers themselves.'") (quoting *Heflin v. United States*, 358

12  U.S. 415, 420 (1959)).  Moreover, in contrast to the federal statute at issue in      *Milanovich*,

13  Washington's second degree murder statute provides two separate means to commit the same

14  crime.

15          Petitioner next points to two Washington Supreme Court decisions.  However, even if

16  petitioner could rely on these state court decisions in support of his habeas claim, they do not

17  demonstrate either an error in state law or the existence of a due process violation.  Unlike in this

18  case, in *State v. Russell* , 101 Wn. 2d 349, 353-54, 678 P.2d 332 (1984), the jury form did not

19  distinguish between the alternative means of second degree murder and only permitted a vote of

20  guilty or not guilty as to the ultimate charge.  Therefore, while it was impossible in   *Russell* to

21  know whether the guilty verdict was based on second degree intentional or felony murder, *id*. at

22  354, the jury in petitioner's case was instructed to unanimously determine the alternative means

REPORT AND RECOMMENDATION
PAGE -18

01  separately.  Nor does the decision in    *State v. Cadena*, 74 Wn.2d185, 443 P.2d 826 (1968),

02  support petitioner's argument.  In that case, the Washington Supreme Court held that the state

03  was not required to elect between the alternative means to commit second degree murder, and

04  upheld the use of jury instructions which allowed the jury to find a defendant guilty of either

05  second degree intentional murder or second degree felony murder.  *Id.* at 195-96, *overruled in*

06  *part on other grounds by State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975).  While *Cadena*

07  supports the use of jury instructions allowing a jury to choose between the alternative means, it

08  does not follow that a jury must be so instructed.  As stated above, Washington law supports the

09  use of jury instructions allowing a jury to convict on both alternative means.   *See Berlin*, 133

10  Wn.2d at 552-53.

11       Finally, in his reply, petitioner points to *Stromberg v. California*, 283 U.S. 359, 367-68

12  (1931), as holding that reversal is required when a conviction may have rested on a constitutionally

13  impermissible ground, despite the fact that there existed a valid alternative ground on which the

14  conviction could have been sustained.  However, as with the cases discussed above, *Stromberg*

15  does not support the existence of a due process violation in this case.  In *Stromberg*, a defendant

16  had been charged with a single count of violating a state statute prohibiting the public display of

17  a red flag for any of three purposes, and the jury was instructed that it could convict and return

18  a general verdict if it found the defendant guilty of violating any one of those three purposes.  *Id*.

19  at 363-64.  The United States Supreme Court held that "if any of the clauses in question is invalid

20  under the Federal Constitution, the conviction cannot be upheld."  *Id*. at 368.  Here, unlike in

21  *Stromberg*, the jury unanimously found petitioner guilty on two separate counts, one of which was

22  later found contrary to law on nonconstitutional grounds.  *See Andress*, 147 Wn.2d at 604-05.

REPORT AND RECOMMENDATION
PAGE -19

01   Despite this change in state law, there remained a valid verdict on a separate, alternative means

02   for committing second degree murder.

03        In sum, petitioner fails to provide any support for his contention that the jury instructions

04   in this case violated his right to due process.  As such, his first ground for relief should be denied.

05   B.      Ground Two

06        In his second ground for relief, petitioner argues that the two second degree murder

07   convictions create an inconsistency or repugnancy in the verdicts depriving him of his

08   constitutional right to due process and trial by jury, and requiring a new trial.  He focuses on the

09   differing intents for the alternative means at issue and maintains that the intent to commit second

10   degree felony murder based on assault, in contrast to second degree intentional murder, implies

11   acts resulting in an unintentional death.

12        As noted above, and as found by the Washington Court of Appeals in this case,

13   Washington courts have specifically determined that the alternative means to commit second

14   degree murder are not repugnant.  *See Berlin*, 133 Wn.2d at 553; (Dkt. 15, Ex. 2 at 6.)  *See also*

15   *State v. Parmenter*, 74 Wn.2d 343, 352, 444 P.2d 680 (1968) ("Repugnancy, of course, among

16   the means of committing the offense charged, depends on opposites. If a single offense can, under

17   a criminal statute, be committed in different ways or by different means, the several ways or means

18   charged in a single count are not repugnant to each other unless proof of one disproves the other,

19   and a conviction may rest on proof that the crime was committed by one of the means charged.")

20   For the reasons described below, petitioner fails to demonstrate that an alleged inconsistency in

21   the verdicts violated federal law, or that the state court decision was either contrary to or involved

22   an unreasonable application of clearly established federal law as determined by the United States

REPORT AND RECOMMENDATION
PAGE -20

01   Supreme Court.

02        "The general rule is that jury verdicts on multiple counts are insulated from review on the

03   ground that they are inconsistent." *Masoner v. Thurman*, 996 F.2d 1003, 1005 (9th Cir. 1993)

04   (citing *United States v. Powell*, 469 U.S. 57, 68-69 (1984); *United States v. Hart*, 963 F.2d 1278,

05   1281 (9th Cir. 1992)). The Supreme Court developed this rule in relation to cases in which a

06   defendant could logically be found guilty of two counts or neither, but the jury convicts on only

07   one count. *Id.*

08        The Supreme Court has not developed a rule in relation to cases where a defendant is

09   convicted of two crimes, but a guilty verdict on one count logically excludes a guilty verdict on

10   the other count. *See Ferrizz v. Giurbino*, 432 F.3d 990, 993 & n.5 (9th Cir. 2005) (citing *Powell*,

11   469 U.S. at 69 n.8).[2]  However, even if such a rule existed and allowed for review on this basis,

12   it remains that petitioner was not subject to two separate convictions. Instead, the jury found

13   petitioner guilty as to two separate means for committing second degree murder and the trial court

14   combined those verdicts to reflect a single conviction. ( *See* Dkt. 15, Ex. 1 at 1, 4 and Ex. 22,

15   Appx. D at 107 and Appx. E at 108.) Petitioner fails to identify any Supreme Court precedent

16   supporting the existence of a due process or other constitutional violation under these

17

18        [2] In *Masoner*, the Ninth Circuit held "that a due process challenge to a jury verdict on the
     ground that convictions of multiple counts are inconsistent with one another will not be considered
19   if the defendant cannot demonstrate that the challenged verdicts are necessarily logically
     inconsistent." 996 F.2d at 1005 ("If based on the evidence presented to the jury any rational fact
20   finder could have found a consistent set of facts supporting both convictions, due process does
     not require that the convictions be vacated.") However, the Ninth Circuit clarified in *Ferrizz* that
21   "[i]t is, of course, not sufficient for purposes of § 2254(d)(1) that our court has spoken if the
     Supreme Court has not[,]" and noted that it did not reverse in *Masoner* because there was no
22   logical inconsistency between the convictions at issue in that case. 432 F.3d at 993 n.5.

REPORT AND RECOMMENDATION
PAGE -21

01 circumstances. *Cf. Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (finding with respect to

02 general verdicts that jury unanimity as to the means by which a crime is convicted is not required).

03 The Supreme Court cases pointed to by petitioner are inapposite. *See United States v. Gaddis*,

04 424 U.S. 544, 547-50 (1976) (addressing convictions under same federal statute at issue in

05 *Milanovich*, but distinguishing factually in that there was no evidence respondents were guilty of

06 receiving proceeds from the robbery and holding that the proper remedy in such a case was

07 vacating the conviction, rather than remanding for a new trial as in *Milanovich*); *Pipefitters Local*

08 *Union v. United States*, 407 U.S. 385, 400-01 & n.11, 440-42 (1972) (finding jury instructions

09 embodied a plainly erroneous interpretation of a federal statute and, therefore, declining to address

10 constitutional issues raised); and *Milanovich*, 365 U.S. at 553-56 (discussed *supra*).[3]

11       Moreover, petitioner fails to demonstrate that the two second degree murder verdicts on

12 alternative means are necessarily inconsistent. The jury found petitioner guilty of second degree

13 intentional murder, defined as intentionally causing the death of another without premeditation,

14 and guilty of second degree felony murder based on assault in the second degree, defined as

15 causing the death of another by intentionally assaulting another and thereby recklessly inflicting

16 substantial bodily harm or assaulting another with a deadly weapon. (*See* Dkt. 15, Ex. 22, Appx.

17 C at  86, 87, 90, 92, 98, Appx. D, and Appx. E.) The jury also found, as to each count, that a

18 deadly weapon – in this case a knife – was used. (*See id.*, Appx. C at 97, 104-05 and Ex. 1 at 1.)

19 As argued by respondent, the jury in this case could have reasonably found facts supporting both

20 the contention that petitioner intended to cause the death of the victim and the contention that

21 _____

22     [3] Also, while petitioner points to a number of state court cases in support of his argument, as noted above, federal habeas relief does not lie for errors of state law. *Lewis*, 497 U.S. at 780.

REPORT AND RECOMMENDATION
PAGE -22

01    petitioner caused the death of the victim by intentionally assaulting him with a deadly weapon.

02          For all of the reasons described above, petitioner's second ground for relief is without

03    merit.  Accordingly, this ground for relief should also be denied.

04    C.     Ground Three

05          In his third ground for relief, petitioner argues that the instructions to the jury allowed for

06    a non-unanimous verdict as to intentional murder, felony murder, or both, violating his Fifth and

07    Sixth Amendment rights.  However, the United States Constitution does not guarantee a

08    unanimous verdict in a state criminal trial.  *Apodaca v. Oregon* , 406 U.S. 404, 410-12 (1972);

09    *Johnson v. Louisiana*, 406 U.S. 356, 359-63 (1972).  Moreover, as demonstrated below, a review

10    of the jury instructions in this case belies petitioner's contention that the jury was allowed to reach

11    non-unanimous verdicts.

12          Instruction number 5 stated: "A separate crime is charged in each count.  You must decide

13    each count separately.  Your verdict on one count should not control your verdict on any other

14    count."  (Dkt. 15, Ex. 22, Appx. C at 80.)  The jurors were then separately instructed as to each

15    count.  (*See id*., Appx. C generally.)  In instruction number 26, the jurors were told of their duty

16    to "deliberate in an effort to reach a unanimous verdict."  (*Id*. at 101.)

17          The jurors were given several verdict forms.  Verdict form A contained two paragraphs

18    – one for murder in the first degree and one for felony murder in the second degree.  (*Id*., Appx.

19    E.)  Verdict form B contained a single paragraph for intentional murder in the second degree. (*Id*.,

20    Appx. D.)  Instruction number 27 instructed the jurors with respect to these forms as follows:

21                    When completing the verdict forms, you will first consider the crimes listed
              on verdict form A.  If you unanimously agree on a verdict on any of the crimes listed
22            on verdict form A, you must fill in the appropriate blank provided the words "not

01  guilty" or the word "guilty[]" according to the decision you reach.  If you cannot

02  agree on a verdict on any of the crimes listed on verdict form A, do not fill in the
    appropriate blank provided.

03          If you find the defendant guilty on verdict form A of murder in the first degree
    as charged in count I, do not use verdict forms B or C.  If you find the defendant not

04  guilty of the crime of murder in the first degree as charged in count I, or if after full
    and careful consideration of the evidence you cannot agree on that crime, you will

05  consider the lesser crime of intentional murder in the second degree.  If you
    unanimously agree on a verdict as to murder in the second degree, you must fill in the

06  blank provided in verdict form B the words "not guilty" or the word "guilty,"
    according to the decision you reach.  If you cannot agree on a verdict, do not fill in

07  the blank provided in verdict form B.

08          If you find the defendant guilty on verdict form A of murder in the first degree
    as charged in count I or find the defendant guilty on verdict form B of intentional

09  murder in the second as included in count I, do not use verdict form C.  If you find
    the defendant not guilty of the crimes of murder in the first degree as charged in count

10  I and intentional murder in the second degree as included in count I, or if after full and
    careful consideration of the evidence you cannot agree on those crimes, you will

11  consider the lesser crime of manslaughter in the first degree.  If you unanimously
    agree on a verdict as to manslaughter in the first degree, you must fill in the blank

12  provided in the verdict form C the words "not guilty" or the word "guilty," according
    to the decision you reach.  If you cannot agree on a verdict, do not fill in the blank

13  provided in verdict form B.

14          Since this is a criminal case, each of you must agree for you to return a
    verdict.  When all of you have so agreed, fill in the proper form of verdict or verdicts

15  to express your decision. . . .

16  (*Id.*, Appx. C at 102-03.)

17      In completing verdict form A, the jury left blank the paragraph for murder in the first

18  degree, but found petitioner "guilty" of second degree felony murder.  (*Id.*, Appx. E.)  On verdict

19  form B, the jury found petitioner "guilty" of second degree intentional murder.  (*Id.*, Appx. D.)

20      Jury instructions "'may not be judged in artificial isolation[;]' [they] must be considered

21  in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting

22  *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)).  Also, juries are presumed to follow instructions.

REPORT AND RECOMMENDATION
PAGE -24

01 *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. March*, 481 U.S. 200, 211

02 (1987)).  In this case, it cannot be said that the jury instructions allowed for a non-unanimous

03 verdict on intentional murder, felony murder, or both.  Instead, the jury is presumed to have

04 followed the instructions, which clearly required unanimity on each count.

05 D.    Ground Four

06       In his fourth ground for relief, petitioner argues that the verdicts for second degree

07 intentional murder and second degree felony murder constitute double jeopardy in violation of the

08 fifth amendment.  He also argues that the trial court improperly merged the two verdicts into one

09 conviction.

10       The Double Jeopardy Clause dictates that no person may be "twice put in jeopardy of life

11 or limb" for the same offense.  U.S. Const. amend. V.[4]  The Clause protects a defendant against

12 multiple punishments or repeated prosecutions for the same offense.  *See United States v. Dinitz*,

13 424 U.S. 600, 606 (1976).

14       In considering petitioner's double jeopardy claim on direct appeal, the Washington Court

15 of Appeals held as follows:

16       Johnson contends his sentence violates the constitutional prohibition against
         double jeopardy.  The double jeopardy clauses of the Fifth Amendment and article 1,

17       section 9 of the Washington Constitution prohibit multiple punishments for the same
         offense.  Felony murder and intentional murder of the same victim are alternative

18       means of committing one offense, and are therefore the same offense for double
         jeopardy purposes.  The question here is thus whether Johnson received multiple

19       punishments.  We conclude that he did not.

20       Johnson's judgment and sentence contains four sections, labeled "Hearing",

21

22       [4] The Double Jeopardy Clause applies to state prosecutions through the Due Process
Clause of the Fourteenth Amendment.  *See Benton v. Maryland*, 395 U.S. 784, 794 (1969).

REPORT AND RECOMMENDATION
PAGE -25

01   "Findings", "Judgment" and "Order." In the findings, the court correctly recited that
02   Johnson was found guilty on both counts by jury verdict, but further found that the
     two counts constituted only one conviction. In the judgment section, the court
03   adjudged Johnson guilty as set forth in the findings, thus incorporating the language
     that there was but one conviction. The court sentenced Johnson to 219 months of
04   incarceration only on count I and imposed no sentence regarding count II. Therefore,
     contrary to Johnson's claim, the judgment and sentence does not impose "two counts
     of conviction" constituting multiple punishments. And while Johnson cites authority
05   that multiple convictions violate double jeopardy even if the sentences run
     concurrently, the cases are inapposite because Johnson received only one conviction
06   and one sentence.

07        Johnson focuses on the court's use of the word "merge" and argues that the
     merger doctrine does not insulate the sentence from his double jeopardy challenge
08   because merger is defined in the Sentencing Reform Act and is limited to "situations
     were multiple convictions are counted as one crime for purposes of calculating the
09   offender score." This argument fails for two reasons. First, merger is not simply a
     creation of the Sentencing Reform Act. "The double jeopardy clauses of the United
10   States and Washington constitutions are the foundation for the merger doctrine." The
     second and more important reason is that despite using the word "merge," the court
11   was not applying the merger doctrine. The doctrine is a rule of statutory construction
     used to determine when the Legislature intends that an act violating more than one
12   statute is to be punished as a single crime. Here, the court properly understood that
     because felony murder and intentional murder are alternative means, there could be
13   only one conviction. The court chose its language not to invoke the merger doctrine
     but to create the effect of a merger. "Where offenses merge and the defendant is
14   punished only once, there is no danger of a double jeopardy violation." Johnson's
     double jeopardy claim fails because he did not receive multiple punishments.

15

16   (Dkt. 15, Ex. 2 at 3-5 (footnotes omitted).)

17        As found by the Washington Court of Appeals, petitioner fails to establish a violation of

18   the Double Jeopardy Clause or an improper merger of two verdicts. The trial court recognized

19   that the two counts in this case represented alternative means of committing second degree murder

20   and imposed only one conviction and one sentence. ( *See id.*, Ex. 1 at 1, 4 (the judgment and

21   sentence reflects that "Counts I and II merge into one conviction of murder in the Second

22   Degree[]" and includes a single sentence on Count I) and Ex. 36, Verbatim Report of Proceedings

REPORT AND RECOMMENDATION
PAGE -26

01  on August 11, 2000 at 37-38 ("The Court in these circumstances agrees with the State and is

02  satisfied that the charges or [stet] alternative means of committing the offense, that they will be

03  the result of only one sentence and the result of only one conviction.  And the court will note that

04  the judgment and sentence should reflect the same."))  Petitioner, therefore, was not subject to

05  multiple punishments.  Nor did the trial court improperly merge the two verdicts; instead, it

06  properly combined the two verdicts into a single conviction of and sentence for second degree

07  murder.  *Cf. Ball v. United States*, 470 U.S. 856, 859-61, 865 (1985) (interpreting federal statute

08  to allow for simultaneous prosecution of possession and receipt of firearms by convicted felons,

09  but not conviction for both when the possession was incidental to the receipt of the gun, and

10  stating: "If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the

11  jury on both counts, he should instruct the jury as to the elements of each offense.  Should the jury

12  return guilty verdicts for each count, however, the district judge should enter judgment on only

13  one of the statutory offenses.")

14       Given the above, petitioner fails to demonstrate in his fourth ground for relief that he is in

15  custody in violation of federal law and that the highest state court decision was contrary to or

16  involved an unreasonable application of clearly established federal law.  Therefore, this ground for

17  relief should also be denied.

18                                              V

19       Petitioner's habeas petition should be denied, and this action dismissed.  A proposed Order

20  of Dismissal accompanies this Report and Recommendation.  No evidentiary hearing is

21  / / /

22  / / /

REPORT AND RECOMMENDATION
PAGE -27

01  required as the record conclusively shows that petitioner is not entitled to relief.

02      DATED this <u>12th</u> day of July, 2007.

03

04                                          Mary Alice Theiler
                                            United States Magistrate Judge

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -28